UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIO ATKINS,<br><br>    Plaintiff,<br><br>  v.<br><br>INTEGRATED MANAGEMENT SYSTEMS,<br><br>    Defendant. | CASE NO. C06-1144 RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## **I. INTRODUCTION**

This matter comes before the Court on defendant's Motion for Summary Judgment. (Dkt. #21). Defendant argues that plaintiff's employment discrimination complaint should be dismissed because defendant had legitimate, nondiscriminatory reasons to terminate plaintiff. Defendant also argues that plaintiff's claims should be dismissed because plaintiff has failed to establish any evidence to support those claims. Plaintiff, appearing pro se, responded by submitting a one-page response wherein plaintiff claimed that defendant terminated his employment without good cause, and indicated to the Court that he had evidence to support his claim without offering such evidence. Sensitive to plaintiff's pro se status, this Court directed plaintiff to submit the evidence in support of his opposition to defendant's motion. Plaintiff submitted exhibits as directed, and now argues that defendant terminated his employment after he complained to defendant about a hostile work environment and racial discrimination. Plaintiff argues that this was retaliation. Plaintiff also argues that defendant

MEMORANDUM ORDER
PAGE - 1

engaged in age discrimination.

For the reasons set forth below, the Court agrees with defendant, and GRANTS defendant's Motion for Summary Judgment.

## II. DISCUSSION

### A. Background Facts

Plaintiff Mario Atkins ("Atkins") is a 44-year-old, African-American male who was periodically employed with defendant Integrated Management Systems ("IMS") as a part-time employee from 2001 through 2005.[1] (Dep. of Atkins at 6:18-19; 42:16-43:25; 44:23-25).[2] IMS is a temporary staffing agency in the business of providing employees to businesses that have project-based needs. (Dkt. #21 at 7). From 2003 to 2004, Atkins did not work for IMS. (Dep. of Atkins at 43:5-25). When Atkins sought employment with IMS again in December of 2004, he filled out a preapplication for employment. In the preapplication, Atkins indicated that he was seeking work in the following areas: "General Warehouse"; "Forklift Assembly"; "Pick 'n Pack"; "Ship/Rec"; and "Unloading." (Dkt. #22, Decl. of Scott Barbara, Ex. 2). The preapplication also indicated that Atkins was willing to: "Lift up to 45 Lbs."; "Stand/Reach/Twist/Bend for 8 hr Shift"; and "Perform repetitive Tasks during an 8 hr Shift." *Id.* Atkins' deposition testimony confirms that he filled out this preapplication form. (Dep. of Atkins at 44:4-46:11).

Atkins also initialed and signed a document titled, "IMPORTANT POLICIES AND PROCEDURES." The document provides in pertinent part:

> Once I have accepted a job assignment/shift/, in person or by phone noting the anticipated duration of the assignment/shift and/or an indefinite duration job assignment/shift, I will report for work at the specified time given to me for the duration of the job assignment/shift. *Failure to complete the assignment/shift/ as*

---

[1] According to IMS's work history of Atkins, he "worked from 5/21/01 to 5/21/[01] then quit 6/04/01. [Atkins] reactivated 9/18/01 and worked from 10/1/01 - 10/28/01[.] He worked from 1/18/02 - 3/18/02 and quit on 3/22/02 to return to ship yards[.] He worked from 1/31/05 - 4/29/05 and quit on 5/2/05[.] He [was] reactivated on 7/5/05 and worked 7/11/05 - 8/5/05[.]" (Dkt. #31 at 25).

[2] Atkins' deposition transcript is found in Dkt. #22, attached as Exhibit 1 to the Declaration of Scott Barbara.

MEMORANDUM ORDER
PAGE - 2

1
2
*agreed upon will be considered a voluntary quit from IMS and will make me inactive for subsequent job referrals.*

\* \* \*

3
4
5
6
It is my responsibility to complete my scheduled work shift and not leave a job site before my shift is completed without speaking to a direct job site supervisor. *Failure to complete the assignment/shift as agreed upon by walking off the job will be considered a voluntary quit by IMS and will make me inactive for subsequent job referrals.*

\* \* \*

7
8
9
10
It is my responsibility to be on time to work and if I am unable to be at my scheduled assignment/shift, it is my responsibility to notify the IMS office of my absence. Failure to notify the IMS office that I will be absent from work is considered a No Show No Call and incompletion of my agreed assignment/shift. *Failure to complete the assignment shift as agreed upon will be considered a voluntary quit by IMS and will make me inactive for subsequent job referrals.*

11
\* \* \*

12
I have read and understand the following IMS . . . policies/procedures[.]

13
(Dkt. #22, Barbara Decl., Ex. 3) (emphasis added).

14
Relevant to this lawsuit is an incident that occurred on August 2, 2005. IMS contends

15
that Atkins indicated that he wanted to work the next day, but did not show up. Atkins claims

16
he never accepted the job. Atkins' deposition testimony provides:

17
18
19
Q: Do you recall there being an issue about August 2nd of '05, about the week before your last day where IMS thought you were going to be at a job and you didn't think you were going to be there because you weren't sure if you could get there, just a no show, no call issue?

20
21
22
A: I remember being on an assignment where we didn't get lunch, I remember they asked if we wanted to work, and I said, sure, I will work, but I'm not sure I can get out there to the job site, I will have to get more information. I told Gary Bishop [Atkins' supervisor, hereinafter "Bishop"][3] to call the office, and to give him - I asked if he could call Metro to see if I could get to that job site, if it was possible.

23
24
Q: You didn't think that was your job as an employee to figure out if you could get there?

25
A: No, because we was running late. I asked him to do that as a favor.

26
Q: You asked [Bishop] to call the office to see if they could find out?

27
28
---
[3] Bishop is Caucasian. (Dep. of Atkins at 59:24-25).

MEMORANDUM ORDER
PAGE - 3

| | | |
|---|---|---|
| A: | Yes. I asked him as a favor, because we were still trying to get this truck loaded and out of there. |
| Q: | What happened? |
| A: | He claimed he didn't have time to do it. By the time I got home it was too late to call and get any of that information, to call Metro and get the information, if I can get there late and call someone in the office and let them know if I get there late would it be okay and all that. I have been doing that about five years. |
| Q: | So by the time you got home from the job you had just worked it was too late to talk to anybody from Metro? |
| A: | Metro and someone in the office. |
| Q: | Were you able to leave a message that said you weren't going to be able to get there? |
| A: | You don't have to leave no message. The only thing you have to do is call and tell them if you are going to actually go to the job, and if you are going to be late or not. I didn't call and actually accept the job. I said I would work if I can get out there, but I will have to get all that information first, if I can get out there by bus, and if I would be late or on time, or if it's a bus that runs away from the job site, if I can get home, and all of that. |
| Q: | Since you were never able to get that your understanding was you weren't expected at the job because you have never really accepted it? |
| A: | No. I didn't accept no job, no. |

(Dep. of Atkins at 95:4-96:25).

Also relevant to this lawsuit is an event that occurred one week later, on August 10, 2005. Atkins alleges that he was the victim of retaliation when he was told by Bishop to perform a job in an unsafe manner while on a job site with IMS. (Dkt. #33 at 1). Atkins contends that Bishop's conduct was retaliatory because on or around late July of 2005, Atkins was denied a lunch break by Bishop. (Dep. of Atkins at 83:15-19; 139:8-11).[4] Atkins alleges that he complained to Denise Caldwell ("Caldwell") of IMS management about Bishop's actions shortly thereafter. *Id.* at 84:14-21. Furthermore, Atkins alleges that Bishop had

---

[4] While Atkins states that he is not exactly sure when he was denied a lunch break by Bishop, the Court estimates that this incident occurred on or around late July of '05 given Atkins' deposition testimony that he was denied a lunch break a few weeks before the alleged retaliatory act occurred on August 10, 2005.

MEMORANDUM ORDER
PAGE - 4

knowledge of Atkins' complaint to Caldwell (Dkt. #16 at 2), and therefore Bishop "tried to force me to unload trucks and carry heavy boxes without mechanical assistance." (Dkt. #6, Plaintiff's Complaint, ¶ 6). Atkins claims that a use of a conveyor belt would have allowed him to load the boxes he was assigned to move onto the conveyor belt, and then lift the boxes off the belt and place them on a pallet. (Dep. of Atkins at 56:17-22). Instead, Atkins was "required to unload a lot of boxes by picking each one up inside a truck and moving each one to a location some distance away. Doing this alone, one box at a time meant that I had to walk the equivalent of 3100 yards." (Dkt. #16 at 2). As a result, Atkins walked off the job. (Dep. of Atkins at 81:16-83:14). IMS subsequently terminated his employment that same day. (Dkt. #33 at 1). IMS contends that Atkins' employment was terminated because "[o]n 8/2/05 [Atkins] did not call to let [IMS] know he wasn't going to a jobsite" and "[o]n 8/10/05 [Atkins] walked off the job prior to the end of his shift and without authorization." (Dkt. #31, Ex. F).

After Atkins was terminated, IMS sought relief from being charged for unemployment compensation to Atkins on the grounds that Atkins was terminated for misconduct under Revised Code of Washington ("RCW") 50.20.066.[5] (Dkt. #32 at 2). On October 19, 2005, the Administrative Law Judge ("ALJ") Laura King found that Atkins was ineligible for benefits.[6] Atkins appealed this decision with the Employment Security Department of the State of Washington, and Review Judge Teresa Morris ("Judge Morris") determined that Atkins was not disqualified from receiving unemployment benefits pursuant to RCW 50.20.066. (Dkt. #31, Ex. D). Judge Morris specifically determined that there was no showing that Atkins intended to quit his employment, and therefore found that Atkins did not engage in misconduct in walking off the job. *Id.* Judge Morris also remanded the collateral

---

[5] RCW 50.20.066 generally disqualifies a claimant from receiving benefits if the claimant is discharged for misconduct connected with his or her work. *Id.*; *see also* RCW 50.20.060.

[6] The decision made by ALJ Laura King was not submitted by either party to this Court. However, the Court finds that this fact is established by a letter drafted by Atkins' attorney with the Unemployment Law Project that handled this proceeding, (Dkt. #31, Ex. C), and an order submitted by Atkins appealing this decision. (Dkt. #31, Ex. D).

MEMORANDUM ORDER
PAGE - 5

1  issue of whether Atkins was eligible for waiting period credits under RCW 50.20.010(1)(c).[7]
2  *Id.* Atkins appealed Judge Morris' decision to ALJ Michael Furtado ("Furtado"), also of the
3  Employment Security Department. (Dkt. #31, Ex. E). On February 13, 2006, ALJ Furtado
4  determined among other things that Atkins was "not subject to the denial of benefits pursuant
5  to RCW 50.20.010(1)(c)." *Id.*

  Soon thereafter, Atkins filed a complaint with the United States Equal Employment
Opportunity Commission ("EEOC"), alleging that IMS discharged Atkins on the basis of race
and in retaliation for complaining that Bishop had harassed Atkins. (Dkt. #3, Ex. 1). The
EEOC apparently dismissed Atkins' claims,[8] and issued a "Notice of Right to Sue" which
permitted Atkins to bring a lawsuit directly in federal court. (Dkt. #31, Ex. J). Consequently,
Atkins initiated a lawsuit against IMS on August 18, 2006 in this Court. (Dkt. #3). In his
amended complaint, Atkins used a standard form to allege employment discrimination under
Title VII of the Civil Rights Act of 1964. (Dkt. #6). While Atkins does not precisely state
which claims he is asserting under Title VII, this Court, again being sensitive to Atkins' pro se
status, finds that Atkins' amended complaint asserts claims under Title VII for wrongful
termination and retaliation because of his race. *Id.* In addition, Atkins brings a claim for age
discrimination, which this Court notes is not covered by Title VII, but by the Age
Discrimination in Employment Act ("ADEA"), as codified by 29 U.S.C. § 621 et seq. IMS
now brings the instant motion for summary judgment, seeking dismissal of all of Atkins'
claims alleged in his complaint. (Dkt. #21).

---

[7] RCW 50.20.010(1)(c) allows "an unemployed individual [to be] eligible to receive waiting period credits or benefits with respect to any week in his or her eligibility period only if the commissioner finds that . . . [h]e or she is able to work, and is available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." *Id.*

[8] There is no evidence before the Court of a final ruling by the EEOC regarding Atkins' claims. However, the Court assumes that the EEOC dismissed Atkins' claims because the EEOC indicated in a letter to Atkins that "[i]f nothing further is received from you that indicates that discrimination occurred, I will recommend that your charge be dismissed." (Dkt. #31, Ex. J). No evidence has been produced to the Court that Atkins provided additional information to the EEOC in response to this letter.

MEMORANDUM ORDER
PAGE - 6

**B.  Standard of Review on Summary Judgment**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are those which might affect the outcome of the suit under governing law. *Id.*  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

**C.  Plaintiff's Claims Under Title VII**

Title VII, as codified by 42 U.S.C. § 2000e-2(a), provides:

> It shall be unlawful employment practice for an employer -  (1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ; or (2) to limit, segregate, or classify his employees or applicants from employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race [or] color[.]

*Id.*

MEMORANDUM ORDER
PAGE - 7

In the instant case, Atkins alleges claims under Title VII for wrongful termination and retaliation. Accordingly, the Court discusses each claim below.

### 1. Wrongful Termination

In order for Atkins' Title VII claim for wrongful termination to survive summary judgment, he must first establish a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). A prima facie case is established when a plaintiff shows that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) similarly situated non-white individuals were treated more favorably. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742 (1993)). "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . claims on summary judgment is minimal and does not even rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (*citing Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)) (emphasis in original); *see also Adbu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (finding that "[a] plaintiff's burden of establishing a *prima facie* case is *de minimis*") (emphasis in original).

If a plaintiff succeeds in establishing these elements, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for terminating a plaintiff's employment. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, the plaintiff must then show that the defendant's reason is pretext for unlawful discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089 (1981).

In the instant case, IMS does not dispute whether Atkins has proved elements one and three of his prima facie case. (Dkt. #21 at 13). However, IMS argues that he has failed to establish elements two and four. With respect to the second element, the Court disagrees with IMS, and finds that Atkins has shown that he was qualified to work for IMS given that IMS

MEMORANDUM ORDER
PAGE - 8

repeatedly hired Atkins on numerous occasions from 2001 through 2005.

But with respect to the fourth element, the Court finds that Atkins has failed to show that similarly situated non-white individuals were treated more favorably. A plaintiff "need not show that he was replaced by a member of a different race; rather, he must show that his [adverse employment action] 'occurred under circumstances giving rise to the inference of discrimination.'" *Aragon*, 292 F.2d at 660 (citations omitted). A plaintiff's subjective belief that he was subject to racial discrimination, without more, is insufficient to avoid summary judgment. *See, e.g., Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (finding that a plaintiff's mere assertions that the employer "had discriminatory motivation and intent in failing to promote him were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment"); *see also Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred [is] simply insufficient to support a jury verdict in plaintiff's favor"). Here, Atkins contends that race was a motivating factor in IMS's decision to terminate his employment. Atkins' deposition testimony provides:

> Q: Why do you think it was race?
>
> A: Because on all the job assignments that we went to, all the people that were being mistreated were minorities. They never mistreated anybody who was white on that job. On all the jobs that I went on there they never treated whites the same way. When we didn't receive no lunch and was working like pack animals everybody out there were minorities.

(Dep. of Atkins at 120:4-11).

Atkins further testifies:

> Q: How do you know what he would have done if there was a Caucasian as part of your crew?
>
> A: You just don't do that.
>
> Q: You don't do what?
>
> A: Put it this way: White people don't dog each other the way white people dog African Americans on the job, they don't do that.
>
> Q: It's your assumption -
>
> A: There is no assumption. I know how people treat each other on the job.

MEMORANDUM ORDER
PAGE - 9

> Everybody knows that. On the job you are not going to sit up here, you are a white man, you are not going to tell another white man you can't have lunch, they will not do that. You are not going to sit up and tell a white man who is supposed to unload a truck we are going to take your conveyor belt and pallets, we want you to unload it one box at a time, you don't do that. You don't see that happening on the jobs. You don't see that.

*Id.* at 125:8-25.

Other than these allegations contained in Atkins' deposition testimony, Atkins offers no other evidence to this Court how or why race was a factor in IMS's decision to terminate his employment. Atkins attempts to show he has a legitimate claim in this Court by offering evidence of a favorable decision by the Employment Security Department of the State of Washington. But as IMS correctly points out, IMS brought the administrative action to seek relief from being charged for unemployment compensation. In that hearing, IMS had the burden of proving whether Atkins' decision to walk off the job constituted misconduct. Judge Morris determined that Atkins did not engage in misconduct, and that Atkins was eligible for unemployment compensation. Racial discrimination was not an issue in that administrative hearing. Thus, the decision has no bearing on whether Atkins now has a cognizable claim under Title VII. Ultimately, there is simply no *objective* evidence besides Atkins' conclusory allegations that would allow this Court to find an inference of discrimination under Title VII. On this basis alone, Atkins' claim for wrongful termination fails as a matter of law.

Even assuming arguendo, that Atkins met the very low threshold in establishing a prima facie case, the Court finds that IMS has proffered legitimate, nondiscriminatory reasons for terminating Atkins' employment. IMS contends that Atkins not only failed to show up at a job he indicated he would be at on August, 2, 2005, IMS also indicates that Atkins walked off the job on August 10, 2005. While Atkins contends that he never accepted the job on August 2, 2005, he does not dispute the fact that he walked off the job on August 10, 2005. Consistent with IMS's policies and procedures, IMS had the ability to terminate Atkins' employment in the event he did not complete his shift on August 10, 2005. As mentioned above, the document Atkins signed provided:

> It is my responsibility to complete my scheduled work shift and not leave a job site before my shift is completed without speaking to a direct job site supervisor. *Failure*

MEMORANDUM ORDER
PAGE - 10

> *to complete the assignment/shift as agreed upon by walking off the job will be considered a voluntary quit by IMS and will make me inactive for subsequent job referrals.*

(Dkt. #22, Barbara Decl., Ex. 3) (emphasis added).

Atkins argues that he walked off the job because he was required to work in an unsafe manner. To support this claim, he offers a drawing to show the unsafe conditions (Dkt. #31, Ex. G), and an IMS document that Atkins contends shows he was supposed to have a conveyor belt to perform his job that day (Dkt. #31, Ex. H). Neither exhibit, however, can rebut IMS's decision, pursuant to its own policies and procedures which Atkins signed, to terminate Atkins' employment. The drawing, drafted by Atkins himself, is similar to a self-serving, conclusory statement about the conditions of his work environment. Additionally, nowhere in the IMS document can this Court find language *requiring* IMS to provide its employees with a conveyor belt. Also, in Atkins' preapplication, Atkins indicated that "Unloading" was an area that he was seeking work in. (Dkt. #22, Decl. of Scott Barbara, Ex. 2). Atkins also indicated that he was willing to: "Lift up to 45 Lbs."; "Stand/Reach/Twist/Bend for 8 hr [s]hift"; and "Perform repetitive [t]asks during an 8 hr [s]hift." *Id.* Consequently, regardless of whether Atkins had a subjective belief that he was subject to an unsafe working environment, the objective evidence before this Court establishes that no such oppressive environment existed.

Furthermore, Atkins cannot establish any connection between the alleged discriminatory acts of his supervisor, Bishop, and the ultimate acts of Caldwell, who notified Atkins of his termination. Atkins simply alleges that Bishop "got wind of my complaint" to Caldwell that Bishop was not giving lunch breaks. (Dkt. #16 at 2). But other than this statement, there is no evidence before the Court that Bishop had such knowledge. Under the burden shifting framework of *McDonnell Douglas*, Atkins simply cannot show that IMS's termination of his employment was merely pretext for racial discrimination because Atkins does not offer any evidence besides his own conclusory allegations and beliefs that race was a factor in IMS's decision. As a result, Atkins' claim for wrongful termination under Title VII fails as a matter of law.

MEMORANDUM ORDER
PAGE - 11

### 2. Retaliation

To make a prima facie case of retaliation under Title VII, a plaintiff must establish that: (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003) (citations omitted). Similar to the burden shifting framework established by *McDonnell Douglas* for wrongful termination claims, if the plaintiff is successful in establishing a prima facie case, the burden shifts to the employer to advance legitimate, nondiscriminatory reasons for any adverse actions taken against the plaintiff. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464-65 (9th Cir. 1994). The plaintiff has the ultimate burden of proving the defendant's proffered reasons are pretextual. *Id.* at 1465.

In the instant case, regardless of whether Atkins can establish a prima facie case of retaliation, Atkins' claim fails as a matter of law for the very same reasons mentioned above with respect to Atkins' wrongful termination claim. IMS had legitimate, nondiscriminatory reasons for terminating Atkins' employment, and Atkins offers only conclusory allegations to rebut IMS's reasons. Atkins has not met his ultimate burden to preclude summary judgment.

### D. Plaintiff's Age Discrimination Claim

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual [over the age of 40] . . . because of such individual's age. 29 U.S.C. § 623(a); 29 U.S.C. § 631(a). In order to make a prima facie case of age discrimination, a plaintiff must show that he was: (1) a member of a protected class; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1997) (citations omitted).

In the instant case, Atkins offers absolutely no evidence to support his age discrimination claim. The only mention of age discrimination on the record before this Court is a reference made in Atkins' response to IMS's motion for summary judgment wherein Atkins states: "I was advised by a lawyer to let the court know my age, I was told when you

MEMORANDUM ORDER
PAGE - 12

[r]each the age of 40 you are protected by some federal laws." (Dkt. #31 at 1). Under these circumstances, Atkins has not met his burden of establishing an age discrimination claim, and therefore this claim must be dismissed.

### III. CONCLUSION

Having reviewed defendant's motion, plaintiff's response, defendant's reply, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #21) is GRANTED. Plaintiff's claims are dismissed in their entirety with prejudice.

(2) Plaintiff's Motion to Appoint Mediator (Dkt. #27) is STRICKEN AS MOOT.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record and to pro se plaintiff at the following address: <u>1922 9th Ave #505, Seattle, WA 98101</u>.

DATED this 20th day of December, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE